480 S.E.2d 444

**Ricky Wayne GUSTINE, Respondent,**

v.

**STATE of South Carolina, Petitioner.**

No. 24552.

Supreme Court of South Carolina.

Submitted Dec. 5, 1996.

Decided Jan. 20, 1997.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Teresa Nesbitt Cosby, Assistant Attorney General Allen Bullard, Columbia, for Petitioner.

Assistant Appellate Defender M. Anne Pearce, of South Carolina Office of Appellate Defense, Columbia, for Respondent.

TOAL, Justice:

We granted certiorari to review the Post–Conviction Relief ("PCR") court's grant of relief to Ricky Wayne Gustine. We reverse.

### FACTUAL/PROCEDURAL BACKGROUND

Gustine was indicted on three counts of criminal sexual conduct with a minor, second degree, and one count of lewd

act upon a child. He previously had been tried [1] and convicted on an offense of assault and battery of a high and aggravated nature and had been sentenced to ten years in prison. Gustine and his retained counsel Joseph Standeffer ("Attorney") entered into plea negotiations with the solicitor's office. The solicitor offered to drop the three counts of criminal sexual conduct against Gustine and to recommend a ten-year sentence concurrent with his previous sentence if Gustine pled guilty to one count of lewd act upon a child. In exchange, Gustine would have to drop his appeal on the case already tried and to "sign away" his parental rights to his stepdaughter.

Gustine agreed to the terms of the plea offer and pled guilty before Judge Frank Eppes on October 19, 1994. Judge Eppes accepted the plea and the State's recommendation and sentenced Gustine to ten years in prison. In March 1995, Gustine filed a PCR application in which he alleged: (1) the trial court failed to ask if his guilty plea was "by your own free will"; (2) the guilty plea was obtained involuntarily by duress, stress, intimidation, and coercion; and (3) Gustine was denied effective assistance of counsel because his guilty plea was not an informed and intelligent decision.

A PCR hearing was held in August 1995. At the hearing, Attorney, who had represented Gustine through the guilty plea process, testified on Gustine's behalf. Attorney stated that he and Gustine had prepared to go to trial. Attorney was aware of the State's evidence, and he and Gustine had discussed trial strategy from the outset. Their defense was going to be that Gustine's ex-wife had fabricated the charges to gain custody of his child. A very important element of what Attorney and Gustine talked about was the possible use of his prior conviction at trial.

Attorney testified about the solicitor's offer: "[W]hen we got an offer that essentially did not give [Gustine] more time than he already had over his head and when we looked at the odds, if you will, of a jury being exposed to that conviction, coming back with a not guilty versus a guilty verdict, that—we began to consider strongly the possibility of a plea." Attorney

---

1. At the trial, the State had presented evidence of Gustine's sexual misconduct against two stepdaughters.

was concerned that the offer of the solicitor "stripped [Gustine's] rights in his appeal," but felt that the offer was "pretty good at the time." Instead of going to trial where Gustine would face up to forty or sixty more years consecutive to the prison term he had already received, he could accept the offer and get ten concurrent years. Attorney further stated:

> ... [Gustine] faced a real quandary in the case. He had a ten year sentence that was under appeal that I knew full well from prior experience and from being directly told that in his up-coming trial, he faced additional time plus he was going to be looking at that conviction being used against him for impeachment and also as other acts of misconduct being used to try to prove the charge that he was facing in the second case. All of that impacted on his chances to win and we discussed those issues thoroughly.

Attorney and Gustine discussed the solicitor's offer "many times." Gustine seemed to understand what he was facing. Attorney explained to Gustine that he did not have to take the offer, explained to him what it meant to terminate parental rights, and told him that by dropping his appeal, he would no longer have an appeal. Initially, Gustine "had a lot of reservations about entering a plea of guilty in the case." He had "some weeks" to think about the offer, and he did think about it "really for a long time." Even the day he went into Court, he was "considering mightily" his decision, "probably right up to the moment that he was standing in front of the Judge."

Gustine also testified at the PCR hearing. He was told that the solicitor's offer was the only one he would receive. He admitted being faced with a difficult decision: "I didn't know what to do. All I knew is that with what [the solicitor] was asking, I couldn't do that and I couldn't go on with a trial with what—how everything turned out." Gustine said that he asked Attorney to talk with the solicitor. The solicitor supposedly told Attorney that she did not care if Gustine was guilty or not; she had convicted him on the first charge against him and that she was going to "get him on the rest." Gustine testified that this "scared the day lights out of me." "I knew then that it was over. . . . I didn't have any other choice."

Gustine gave the following testimony on cross-examination:

Q: And you knew you had a right to a jury trial, right?

A: Yes, sir.

Q: Okay. And you knew—you understood what this deal was that you were pleading guilty to; that you were terminating your parental rights and that you were—that you were going to drop your appeal in exchange for a ten year sentence?

A: When I had—when I agreed to that guilty plea, I did not really understand what I was even giving up at the time. The only thing I knew was that if I didn't do exactly what everyone was telling me, that I would be—that I would probably get sixty years and that's what I discussed with my counsellor. I discussed it with my parents and my fiance at the time.

Q: So you knew you had a right to go to have a trial on these charges but you chose to plead guilty, right?

A: To the best of my knowledge, I went ahead and agreed to it because I felt I had no other choice.

Q: You didn't feel like you could win a jury trial, did you?

A: Not with what my attorney was telling me and without him talking to the witnesses and without him getting what the State's information was, no, I didn't think I'd have a chance.

The PCR Court was concerned about whether a solicitor has a right, in order to procure a guilty plea, to demand that a defendant give up a right to appeal and give up his parental rights. In his order, the PCR court found that the use of the threat of a sixty-year prison sentence to obtain a plea that required Gustine to relinquish his parental rights and his right to appeal a prior conviction amounted to "coercion as a matter of law." The court further found that the applicant "was not fully informed of his rights or the ramifications of accepting the plea agreement."

## LAW/ANALYSIS

■ "The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203, 208 (1985) (citations omitted). The

United States Supreme Court has declared that "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747, 756 (1970). In *Brady*, the Court declined to hold that "a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." *Id.* at 751, 90 S.Ct. at 1470, 25 L.Ed.2d at 758.

The issue before the Court in the present case is whether a solicitor's plea offer that is conditioned upon a defendant's foregoing an appeal in another case and agreeing to terminate his parental rights is intrinsically so coercive that the defendant's guilty plea would be considered involuntary as a matter of law. Rather than deciding what demands by a solicitor are coercive as a matter of law, we conclude that the better approach is to determine on a case-by-case basis whether a defendant knowingly and voluntarily enters a plea of guilty. *See, e.g., Wade v. State*, 308 S.C. 552, 419 S.E.2d 781 (1992) (finding record reflected petitioner's knowing, intelligent, and voluntary entry of his plea of guilty, despite the fact that petitioner alleged that his guilty plea counsel had told him that if he did not plead guilty to the charges against him, his female family members, who had also been charged, would go to jail).

All that is required to knowingly and voluntarily enter a plea of guilty is that a defendant have a full understanding of the consequences of his plea and of the charges against him. *Simpson v. State*, 317 S.C. 506, 455 S.E.2d 175 (1995). Under such a test, Gustine knowingly and voluntarily pled guilty. There was extensive testimony by Attorney and by Gustine himself that they considered all options, that they planned a trial strategy, that they prepared for trial, that the implications of pleading guilty were explained to Gustine, that Gustine reflected for a long time whether to plead guilty, and that he considered the decision even up until the day of the guilty plea hearing. Furthermore, at the guilty plea hearing, Gus-

tine was asked by the court whether he was pleading freely and voluntarily:

> [Court]: You understand you have a right to a trial by jury. You do not have to testify. If you do not testify, I charge the jury they couldn't hold that against you. You want to waive, forfeit, give up all your constitutional rights and plead guilty?
>
> [Gustine]: Yes, sir, I do....
>
> [Court]: And you're pleading guilty freely and voluntarily?
>
> [Gustine]: Yes, sir.

As abundantly confirmed by the evidence above, Gustine's choice was voluntary, knowing, and intelligent, with sufficient awareness of the relevant circumstances and likely consequences. He had a full understanding of the consequences of his plea and of the charges against him. Accordingly, the evidence presented at the guilty plea and the PCR hearings does not support a finding that Gustine was coerced into pleading guilty.

## CONCLUSION

The PCR court's order granting relief is **REVERSED.**

FINNEY, C.J., and MOORE, WALLER and BURNETT, JJ., concur.